UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------

UNITED STATES OF AMERICA,

-v-

DOMINGO RAMOS,

                Defendant.

16-CR-826 (PAE)

ORDER

------

PAUL A. ENGELMAYER, District Judge:

The Court has received an application on behalf of defendant Domingo Ramos seeking his compassionate release from the Metropolitan Correctional Center ("MCC") pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkt. 474 ("Def. Mem.").

On December 4, 2019, following Ramos' guilty plea to one count of participating in a narcotics conspiracy, the Court sentenced Ramos to 120 months' imprisonment. *See* Dkt. 453 ("Sent. Tr.") at 3, 29. He has served approximately 35 months of his sentence. *See* Def. Mem. at 3 (noting that Ramos had served 28 months at the time of sentencing). The Government and Ramos agree that Ramos has at least five years left in his sentence. *See id.* at 4; Dkt. 491 ("Gov't Opp.") at 2.

On June 2, 2020, the Court received a *pro se* letter from Ramos, asking for, *inter alia*, a sentence reduction. *See* Dkt. 471 ("Def. Ltr.") at 2–6. The Court ordered Ramos' counsel to respond to the letter, making any colorable legal arguments in favor of relief for Ramos. *Id.* at 1. On June 3, 2020, Ramos' counsel filed such a letter, moving for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Def. Mem. The Court also ordered the Government to respond

to Ramos' letter and to include an explanation of why Ramos had not been transferred from the MCC to a long-term BOP facility. Def. Ltr. at 1. On June 8, 2020, the Government filed a letter, which reported that Ramos had not been transferred to a long-term BOP facility due to the COVID-19 pandemic, but did not address, or oppose, Ramos' counsel's motion for compassionate release. Dkt. 476. On June 23, 2020, the Court again ordered the Government to respond to Ramos' motion. Dkt. 486. On June 26, 2020, the Government filed that response. *See* Gov't Opp. On July 2, 2020, Ramos filed a reply, which included a release plan. Dkt. 493.

Ramos asks the Court to grant him "compassionate release, or in the alternative medical furlough" in light of the COVID-19 pandemic. Def. Mem. at 1. Ramos, who is 41 years old, argues he should be released because of the risk COVID-19 poses to him. *See id.* at 4. As of June 3, 2020 (the date of Ramos' submission), Ramos had not obtained his prison health records, but was aware of his placement on a list of MCC inmates who were at high risk if they contracted COVID-19. *Id.* The Government, which had received Ramos' BOP medical records, notes that Ramos has asthma. Gov't Opp. at 2. The Government observes that Ramos' medical records describe his condition as "childhood asthma," and nothing in his interactions with MCC medical staff suggest that the asthma is "moderate or severe." *Id.* The Government opposes Ramos' early release. *See id*. at 1. It argues that Ramos' motion should be denied because Ramos has not demonstrated extraordinary and compelling reasons for his release, and the 18 U.S.C. § 3553(a) factors do not support his release. *See id.* at 1–2.[1]

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the

---

[1] The Government does not contend that Ramos has failed to exhaust his administrative remedies. *See* Gov't Opp. at 1 n.1.

defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)).  Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[2]  U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

The first of these factors favors, to a degree, Ramos' early release.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  COVID-19 presents a heightened risk for incarcerated defendants like Ramos with respiratory conditions.  The Centers

---

[2] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *Ebbers*, 432 F. Supp. 3d at 422–23, 427.

for Disease Control warns that persons with asthma[3] are at elevated risk of serious illness if they contract the disease.  Further, the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[4]  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[5] and, in more limited

---

[3] *See People with Moderate to Severe Asthma*, Ctrs. for Disease Control and Prevention (Mar. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

[4] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[5] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

instances, the compassionate release of high-risk inmates serving federal sentences.[6]  At the same time, while Ramos' asthma undoubtedly presents risks related to COVID-19, the Court notes that he is relatively young and does not have other health conditions that compound that risk.[7]  In addition, the Government notes that Ramos' medical records reveal that "in June 2019 he described his asthma as 'stable' and stated that he had not used his inhaler in three months," and "in 2018, he described his asthma as 'no problem' and stated that he had not used his inhaler in two months."  Gov't Opp. at 2.  The Court assumes *arguendo* that Ramos' asthma put him at somewhat higher risk than the average inmate, while recognizing that these conditions are far less acute than those of many inmates who have successfully sought release in light of the pandemic.

Nevertheless, even viewing this factor in Ramos' favor, a reduction in his sentence is not supported for two independent reasons.

---

[6] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390, Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. April 2, 2020) (ordering compassionate release of defendant with asthma who had served 17 months of a 24-month sentence, was scheduled for release in four months, and was not a danger to the public).

[7] *See, e.g.*, *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (same for 64-year-old defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

5

The Court cannot find that Ramos "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), as is required for compassionate release. Ramos' conduct in this case gravely endangered public safety. He took part in two drug trafficking organizations—leading one of them—that sold large quantities of heroin. *See* Sent. Tr. at 18–20. Furthermore, while trafficking drugs, Ramos personally possessed guns and also provided them to his co-conspirators. *Id.* at 20. Ramos engaged in such conduct notwithstanding a prior criminal record, which included a conviction for attempted murder during which he shot his victim in the face. *Id.* at 22. Ramos was sentenced to five to ten years' imprisonment for that attempted murder; he committed more crimes after his release, demonstrating that he had been undeterred by a lengthy prison sentence. *Id.* For these reasons, at sentencing, the Court rejected Ramos' request for an 84-month sentence and found that the severity of the crime, the protection of the public, and specific deterrence warranted a longer sentence. *Id.* at 27. The Court cannot today find that the 35-month sentence that Ramos now effectively seeks is compatible with public safety.

Independently, the Court further cannot find that the application of the § 3553(a) factors favors Ramos' release after service of approximately 30% of his announced sentence. To be sure, one § 3553(a) factor weighs more heavily in Ramos' favor today than at the time of sentencing: "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). This factor favors a shorter sentence than imposed given the risk that the COVID-19 pandemic presents to Ramos as an asthmatic. But the Court cannot comfortably find that a sentence reduction on the order that Ramos seeks would result in a sentence commensurate with the interest in just punishment in light of the gravity of his crimes, the interest in public protection, or the interest in specific deterrence. For the reasons discussed in detail at Ramos'

6

sentencing, a sentence in the range of 120 months' imprisonment was necessary to achieve those goals, viewed in combination. Notably, the 120 months' sentence that the Court imposed reflected a significant downward variance from the advisory Guideline range which was between 188 and 235 months. *See* Sent. Tr. at 28. Converting this to a 35-month sentence, in the Court's judgment, would disserve these important § 3553(a) factors.

In this respect, Ramos' circumstances are distinct from those of several defendants with similar ailments whose compassionate release the Court has granted in recent months in recognition of the changed circumstances presented by COVID-19. These defendants had served a substantially greater proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release consistent with the § 3553(a) factors. *See, e.g.*, *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (S.D.N.Y. April 10, 2020) (ordering compassionate release of defendant who has served all but seven months of an 88-month sentence); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (same for defendant who had served all but 34 days of a four-month sentence); *Hernandez*, 2020 WL 1684062, at *3 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months). Had Ramos' application for release been made closer to his release date, this same outcome might have inhered here.

Accordingly, finding that Ramos continues to pose a danger to the community and that the § 3553(a) factors considered in combination do not support a reduction of sentence, the Court denies Ramos' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This application is without prejudice to Ramos' ability to seek compassionate release later in his prison term.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 6, 2020
       New York, New York

8